IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KENNETH STOLLER, M.D.,**
**individually and d/b/a**
**SIMPLY HYPERBARICS, LLC.,**

      **Plaintiffs,**

      vs.                                  No. CV-04-0311 JH/RLP

**REINT ROOSSEIN, RICHARD VISSER,**
**LIN VISSER, BART VAN DER MEER,**
**individually and d/b/a INTERNATIONAL**
**HYPERBARIC HOLDING COMPANY,**

      **Defendants.**

**<u>Proposed Findings of Fact</u>**
**<u>and Recommendation for Resolution</u>**
**<u>Regarding Motion to Enforce Settlement Agreement</u>**[1]

      This matter comes before the court on Plaintiff Stoller's Motion to Enforce Settlement Agreement (Docket No. 44). Defendants likewise seek to enforce the Settlement Agreement but disagree in one particular as to the scope of the agreement reached. (Document No. 45). Although not filed as such, the court will consider Defendants' Response as a Cross Motion to Enforce Settlement Agreement.

Factual Background

      This lawsuit arose from a failed commercial venture. Plaintiff Stoller ("Stoller") was the minority shareholder, managing member and medical director of Simply Hyperbarics L.L.C. ("SH"),

---

[1] THE PARTIES ARE HEREBY NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections withe the Clerk of the District Court pursuant to 28 U.S.C. §636(b((1). A party must file objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

a limited liability company registered in Belize and doing business in New Mexico.  International Hyperbarics Holding Company ("IHHC") was the majority shareholder in SH. (Docket No. 36, p. 5). Stoller, individually and d/b/a Simply Hyperbarics L.L.C.,  sued Defendants in October of 2003, seeking equitable relief and contractual damages.[2]  Defendants Roossein and IHHC answered the Complaint, and  IHHC countersued[3].  None of the other defendants were served with process.

     Plaintiffs acquiesced to entry of partial Summary Judgement in favor of Defendants regarding  claims for fraud and attorneys fees.  [Docket No. 28, p. 6 ].  On May 31, 2005, the Hon. Judith Herrera entered partial Summary Judgment in favor of Defendants on Plaintiffs' claims for breach of contract for failure to pay salary to Plaintiff Stoller.  [Docket No. 32, 33].

On July 8, 2005, Plaintiffs' attorney, Mr. Wolf,  moved to withdraw as counsel for both Plaintiffs.  The motion was granted in part.  Mr. Wolf was permitted to withdraw as counsel for SH, but not as counsel for Stoller.  Representation of SH was assumed by  attorney Jeffries,  (Docket No. 34, 39 & 42).  Mr. Wolf continued to represent  Stoller on other matters as well.  (Docket No. 46, ¶8).

The parties negotiated a settlement, and so informed Judge Herrera on July 21, 2005.  Accordingly, the non-jury trial in this matter that had been scheduled for August 11, 2005 was vacated.  (Docket No. 43 & 40).  The parties have submitted affidavits with supporting documents

---

[2]Plaintiffs' complaint sought judicial termination of the limited liability company (Count I); a restraining order to prevent a shareholder meeting (Count II); Damages for breach of contract to provide adequate operating capital (Count III);  Damages for fraud (Count IV).

[3]IHHC's First Amended Counterclaim sought damages for breach of fiduciary duty (Count I), bad faith breach of contract (Count II) and  interference with existing contractual relations (Count III), as well as  reformation of the operating agreement related to the limited liability company (Count IV) and an accounting (Count V).

setting forth their versions of the facts. They agree that as to the dispute which is the subject matter of this law suit, agreement has been reached and that they will execute a mutual release of claims. The disagreement as to the scope of the settlement agreement pertains to claims Defendants may wish to assert in the future against Mr. Wolf and/or his law firm.

## Applicable Law.

A trial court has the authority to "enforce a settlement agreement entered into by the litigants while the litigation is pending before it." United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir.1993). Construction of a settlement agreement generally is governed by state law. U.S. v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000); United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir.), cert. denied, 506 U.S. 1022 (1992), cited in Brockman v. Sweetwater County School District No. 1, 25 F.3d 1055 (Table), 1994 WL 170795 (10th Cir.), 91 Ed. Law Rep. 876 (Unpublished Disposition). New Mexico public policy encourages the enforcement of settlement agreements. Board of Education for the Carlsbad Municipal Schools v. New Mexico State Department of Public Education, 128 N.M. 398, 401, 993 P.2d 112, 115 (1999).

Resolution of the issues presented requires the application of contract principles of offer and acceptance and the rules of mutual assent. Cf. Pope v. The Gap, Inc., 125 N.M. 376, 379, 961 P.2d 1283, 1286 (Ct. App. 1998). An offer and acceptance creates a binding contract when there is an objective manifestation of mutual assent by the parties to the material terms of the contract. Pope, 125 N.M. at 379-380. "Mutual assent is based on objective evidence, not private, undisclosed thoughts of the parties." Id.

## Findings of Fact

Based on the affidavits and other evidentiary material presented, the court makes the

following findings of fact:

1. On July 21, 2005 the parties agreed to settle "by both sides walking away from the dispute between them, without payment by either party to the other." (E-mail from Defendants's attorney Bunting to attorney Jeffries, Docket No. 45, Ex. 7).

2. On September 7, 2005 a draft Settlement Agreement and Mutual Release of All Claims was e-mailed by Defendants' attorney, Mr Bunting, to SH's attorney, Mr. Jeffries, which specifically preserved any claim against Aaron Wolf and/or the law firm of White, Koch, Kelly & McCarthy. (Docket No. 45, Ex. 8).

3. On September 9, 2005 Mr. Jeffries acknowledged receipt of the Release, and suggested specific changes which did not pertain to the reservation of claims paragraph. A copy of this acknowledgment was copied to attorney Wolf and Plaintiff Stoller. (Docket No. 45, Ex. 9).

4. On October 6, 2005 Mr. Bunting e-mailed to Mr. Jeffries a revised Settlement Agreement and Mutual Release of All Claims incorporating the changes suggested by Mr. Jeffries, with additional revisions that did not pertain to the reservation of claims paragraph. The language reserving claims against attorney Wolf and his firm remained unchanged. (Docket No. 45, Ex. 10).

5. On October 11, 2005 Attorney Jeffries acknowledged receipt of the Revised Release in an e-mail to Mr. Bunting, stating to Mr. Bunting that "it looks fine." He forwarded the Revised Release to attorney Wolf. This e-mail was copied to Stoller and attorney Wolf. (Docket No. 45, Ex. 11).

6. Attorney Wolf reviewed the Revised Release, made changes, and returned it to

       Attorney Jeffries. On October 20, 2005 Mr. Jeffries e-mailed these revisions to Mr. Bunting. No changes were made to the language reserving a claim against attorney Wolf and his firm. (Docket No. 45, Ex. 12).

7. Stoller received copies of the Releases. (Docket No. 46, Affidavit of Kenneth P. Stoller).

8. On October 23, 2005 Mr. Jeffries e-mailed Mr Bunting with additional language changes suggested by Stoller, which did not relate to the potential claim against attorney Wolf and his firm. (Docket 45, ex. 13).

9. In his October 23, 2005 e-mail, Mr. Jeffries specifically referred to the clause reserving claims against Mr. Wolf and his firm stating that he assumed Mr. Wolf was aware of the clause as it had been in prior versions of the Release. This e-mail was copied to Stoller and attorney Wolf. (Docket 45, ex. 13).

10. On October 26, 2005 Mr. Jeffries for the first time objected to the clause reserving claims against Mr. Wolf and his firm. (Docket No. 45, Ex. 14).

11. Attorney Wolf and his firm were not parties to this suit.

12. The clause reserving claims against Mr. Wolf and his firm, contained in all versions of the Release, was not hidden or ambiguous.

13. The clause reserving claims against Mr. Wolf and his firm, contained in all versions of the Release, is not inconsistent with the July 21, 2005 verbal agreement of the parties to walk away from the dispute between them, without payment by either party to the other.

14. Mr. Jeffries, Mr. Wolf and Stoller had adequate time and opportunity to exam and

review all versions of the Release, and to note what was contained therein.

## Conclusion and Recommended Disposition

Based on the foregoing, I conclude that the acceptance without objection on multiple occasions by Plaintiff and his counsel of Release language reserving Defendants' claims against Attorney Wolf and his firm constitutes objective manifestation of mutual assent to that provision. I further find that Plaintiff is contractually bound to the Release term reserving Defendants' claims against Attorney Wolf and his firm, and that there settlement terms should be enforced.

Accordingly, I recommend as follows:

1. That Plaintiff's Motion to Enforce Settlement (Docket No. 44) be denied;

2. That the Settlement between the parties be Enforced, incorporating the reservation of rights claims against Attorney Wolf and his firm.

*[signature]*
Richard L. Puglisi
United States Magistrate Judge